UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

TAJ GRAPHICS ENTERPRISES, LLC | Case No. 22-cv-13010

Honorable Robert J. White

## OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S NOVEMBER 29, 2022 SETTLEMENT ORDER

I. <u>Introduction</u>

Prime Financial, Inc., appeals the bankruptcy court's opinion and order (1) granting the Chapter 7 Trustee's motion for approval of a compromise that assigned potential estate assets to Robert Kattula for cash, and (2) denying as moot Prime's motion for, among other things, an evidentiary hearing to determine the ownership of these same assets.

Before the Court is Prime's opening brief. (ECF No. 5). The Trustee, Kattula, and the United States all responded. (ECF Nos. 6-7). Prime filed a reply along with

a sur-reply.[1] (ECF Nos. 8-9).  For the following reasons, the bankruptcy court's opinion and order is affirmed.

II.    Background

A.    *The Parties*

TAJ Graphics is a Michigan limited liability company that Robert Kattula formed in 1998. *In re Taj Graphics Enters., LLC*, 601 B.R. 451, 456 (Bankr. E.D. Mich. 2019).  Kattula manages and controls TAJ as the company's president. *Id.* TAJ's membership has, at different times, included Kattula's wife, his children, and a litany of trusts that his wife controls. *Id.*  TAJ declared Chapter 11 bankruptcy for the second time in October 2009. *Id.* (ECF No. 3, PageID.18).  The bankruptcy court converted the case to a Chapter 7 proceeding May 2019. *See In re Taj Graphics Enters., LLC*, 600 B.R. 1, 6 (Bankr. E.D. Mich. 2019).

Prime Financial, Inc. is a Michigan corporation that Aaron Jade owns and operates. *In re Taj Graphics Enters., LLC*, 601 B.R. at 456.  It is one of TAJ's longstanding creditors. *Id.* at 456-57.  In the current bankruptcy, it has an allowed nonpriority unsecured claim against TAJ worth over $1.3 million. *Id.* at 514.

---

[1] Prime filed another round of briefs after the district judge previously assigned to this appeal entered a second scheduling order "in error." (ECF No. 13, PageID.838). Because the entry of the second scheduling order clearly resulted from a mistake, the Court will not consider Prime's "corrected" appellant's brief or its objections to the Court's notice of correction. (ECF Nos. 12, 14).

B.      *The Bankruptcy Trustee's Motion*

On July 12, 2022, the Chapter 7 Trustee moved to approve a compromise between the bankruptcy estate and Kattula. (ECF No. 3, PageID.189-228).  The Trustee offered to assign the estate's interest in five categories of assets to Kattula in exchange for (1) a $50,000 cash payment, and (2) Kattula and his affiliated entities' relinquishment of approximately $7 million in claims against the estate. (*Id.*, PageID.198, ¶¶ 28-29).  Since the estate and Kattula disputed who owned these assets, the Trustee denominated them as "potential assets." (ECF No. 3, PageID.190).  They comprise:

> (1) any rights that K&B Capital, LLC – a Kattula-controlled entity – assigned to TAJ pursuant to a 2004 assignment (*Id.*, PageID.209);
>
> (2) any rights that Kattula assigned to TAJ pursuant to a 2006 assignment (*Id.*, PageID.211);
>
> (3) legal claims that Kattula and K&B Capital asserted against, among others, Prime, Aaron Jade, and Calvert Properties, LLC in a Kentucky state court (*Id.*, PageID.213-224);
>
> (4) an unconditional guarantee of payment that three individuals executed in favor of K&B Capital; and
>
> (5) $1.5 million that Kattula and his wife owe to TAJ and is secured by a mortgage on Kattula's residence.

(*Id.*, PageID.189-90, ¶ 5).

The Trustee acknowledged that the bankruptcy court had previously deemed the 2004 assignment ineffective but had never decided the 2006 assignment's

validity. (*Id.*, PageID.190-91, ¶¶ 6-7).  The later assignment encompasses perhaps the most valuable potential asset – the rights to a "memorandum of understanding" ("MOU") between Kattula and Calvert Properties governing the joint operation and profit distributions from a Kentucky landfill. (*Id.*, PageID.192-194).  What is more, the Trustee noted that Prime's owner, Aaron Jade, also controls Calvert Properties. (*Id.*, PageID.192, ¶¶ 13-14).

Seeking to preclude Kattula from asserting any property interest in the MOU, Prime objected to the Trustee's motion and challenged the compromise. (*Id.*, PageID.232-43).  It argued that Kattula should be estopped from claiming any interest in the MOU because he about-faced from his earlier position in the bankruptcy, conceding that the potential assets belonged to the estate. (*Id.*, PageID.239-40).  And it asked the bankruptcy court to remove the Trustee for failing to investigate and administer the estate's assets. (*Id.*, PageID.242).

Meanwhile, the United States government forged its own settlement with Kattula.  According to that arrangement, Kattula (1) agreed to pay a "substantial portion" of his outstanding tax debt, (2) he acknowledged that federal tax liens, and a related judgment lien, attach lawfully to a "residence titled to his wife as a trustee of a family trust" as well as a mortgage attached to the same residence, and (3) he declined to contest the United States' determination that TAJ operated as his alter-ego and/or nominee. (*Id.*, PageID.280-82; ECF No. 6, PageID.561 n.1).  For its part,

the United States (1) released its tax levy on the $50,000 Kattula had earmarked for the Trustee, and (2) agreed to relinquish its secured claim to all the estate's assets, so long as the bankruptcy court approved the Trustee's compromise with Kattula. (ECF No. 3, PageID.280-282).  The government did not waive its unsecured priority tax claims. (*Id.*, PageID.281-82, 510 n.2).[2]

###   C.    The Bankruptcy Court's Decision

After conducting a hearing to assess the compromise's fairness (ECF No. 7, PageID.625-62), the bankruptcy court granted the Trustee's motion to approve the settlement. (ECF No. 3, PageID.499-511).  In its November 29, 2022 opinion and order (the "settlement order"), the court found that the compromise "is fair and equitable; is reasonable; is in the best interest of the bankruptcy estate and its creditors; and should be approved." (*Id.*, PageID.501).   The bankruptcy court likewise denied as moot an earlier motion that Prime had filed because it requested, among other things, an evidentiary hearing to determine the ownership of the already compromised assets. (*Id.*, PageID.507).  The court directed that the settlement order "be effective immediately upon entry." (*Id.*, PageID.511).  Prime now appeals the order in its entirety. (ECF No. 1, PageID.3-5).

---

[2] The United States' claims in the amount of $436,154.68 are secured through federal tax liens filed before TAJ initiated this Chapter 11 bankruptcy proceeding in October 2009. (ECF No. 3, PageID.515).  The United States' unsecured claims in the amount $34,596.47 are entitled to priority status pursuant to 11 U.S.C. § 507(a)(8)(C). (ECF No. 3, PageID.515, 519; ECF No. 6, PageID.568 n.5).

III.    Standards of Review

A bankruptcy court's factual findings are reviewed for clear error while any legal questions are reviewed *de novo*. *Nat'l Union Fire Ins. v. VP Bldgs., Inc.*, 606 F.3d 835, 837 (6th Cir. 2010) (quotation omitted).  "The bankruptcy court's approval of a settlement agreement is reviewed for an abuse of discretion." *Hindelang v. Mid-State Aftermarket Body Parts, Inc. (In re MQVP, Inc.)*, 477 F. App'x 310, 312 (6th Cir. 2012).  "An abuse of discretion occurs where the reviewing court has a definite and firm conviction that the court below committed a clear error of judgment." *B-Line, LLC v. Wingerter (In re Wingerter)*, 594 F.3d 931, 936 (6th Cir. 2010) (quotation omitted).

IV.    Analysis

    A.    *Statutory Mootness*

Before reaching the settlement order's merits, both the Trustee and Kattula urge the Court to dismiss the appeal at the outset as statutorily moot.[3] (ECF No. 7, PageID.605-12).  11 U.S.C. § 363(m) provides that:

> **(m)** The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency

---

[3] The United States, on the other hand, asks the Court to first decide the merits of the settlement order and only then address section 363(m) mootness as an alternative ground for affirmance. (ECF No. 6, PageID.583).

of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

Pursuant to the statute, an appeal from a bankruptcy court's order granting the trustee authority to sell certain property is moot if the appellant fails to obtain a stay pending the appeal and "the trustee has *already conveyed* the property to a bona fide purchaser for value." *Brown v. Ellmann (In re Brown)*, 851 F.3d 619, 622 (6th Cir. 2017) (emphasis added); *see also Official Comm. of Unsecured Creditors v. Anderson Senior Living Prop., LLC (In re Nashville Senior Living, LLC)*, 620 F.3d 584, 591 (6th Cir. 2010) (limiting section 363(m) mootness to "consummated" transactions); *Made in Detroit, Inc. v. Official Comm. of Unsecured creditors of Made in Detroit, Inc. (In re Made in Detroit, Inc.)*, 414 F.3d 576, 581 (6th Cir. 2005) (same).

The mootness rule is intended to "encourage participation in bankruptcy asset sales and increase the value of the property of the estate by protecting good faith purchasers from modification by an appeals court of the bargain struck with the trustee." *In re Brown*, 851 F.3d at 622 (cleaned up). The rule applies "regardless of the merits of legal arguments raised against" the bankruptcy court's decision. *In re Nashville Senior Living, LLC*, 620 F.3d at 591 (quotation omitted).

Invoking section 363(m) mootness in this case raises several unanswered questions. *First*, it is unclear whether the Trustee's assignment of the potential assets for value qualifies as a "sale" under section 363(m). While the Third and Ninth

Circuits regard the assignment of estate assets for consideration as a section 363(m) "sale," the United States Court of Appeals for the Sixth Circuit has never addressed the issue. *See Krebs Chrysler-Plymouth, Inc. v. Valley Motors*, 141 F.3d 490, 498 (3d Cir. 1998); *In re Exennium, Inc.*, 715 F.2d 1401, 1404 (9th Cir. 1983); *see also In re Cooper*, 592 B.R. 469, 478-80 (Bankr. S.D.N.Y. 2018).

The closest decision is *Weingarten v. Nostat, Inc. v. Serv. Merch. Co.*, 396 F.3d 737, 742-43 (6th Cir. 2005), where the Sixth Circuit ruled that the assignment of a lease for value is a "sale" under section 363(m). But the Sixth Circuit has never ruled directly that a *non-leasehold* assignment for value is tantamount to a section 363(m) sale and, therefore, insulated from appellate review absent a stay. The Court declines to reach that conclusion without express guidance from the court of appeals. *See Bittinger v. Tecumseh Prods. Co.*, 83 F. Supp. 2d 851, 872 n.14 (E.D. Mich. 1998).

*Second*, Kattula's good faith purchaser status is doubtful. The Sixth Circuit defines section 363(m) "good faith purchasers" as those who purchase "the assets for value, in good faith, and without notice of adverse claims." *In re Made in Detroit, Inc.*, 414 F.3d at 581 (quotation omitted). Kattula appears to fail this test. Not only did he know about the estate's adverse claims to the potential assets – *he was* the estate's arch-adversary in the contest over who owned them. (ECF No. 3, PageID.200, ¶ 35) (noting that the potential assets "are either owned by the

bankruptcy estate, K&B, or Kattula" and that "Kattula intends to fully litigate the ownership issue.").

And *third*, the record is devoid of any indication that the Trustee and Kattula ever consummated the assignment for value. *See, e.g., In re Nashville Senior Living, LLC*, 620 F.3d at 591. Although the party asserting mootness "bears the burden to prove that the case is actually moot," *In re Brown*, 851 F.3d at 623; *see also Riverview Trenton R.R. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 945-46 (6th Cir. 2007), neither the Trustee nor Kattula point to any evidence demonstrating that the Trustee "already conveyed" the potential assets to Kattula.[4] *In re Brown*, 851 F.3d at 622.

A review of the bankruptcy court's docket *does* show that the Trustee filed two annual reports since this appeal's inception – one for the period ending March 31, 2023, and another for the period ending March 31, 2024. (Bankr. E.D. Mich., Case No. 09-72532, ECF Nos. 1269-70). Both reports seem to indicate that the assignment for value occurred sometime before March 31, 2023. (*Id.*, ECF No. 1269, PageID.1, ECF No. 1270, PageID.1). *See Clark v. Stone*, 998 F.3d 287, 297 n.4 (6th

---

[4] The Trustee and Kattula's representations that "Kattula has paid the $50,000 to the estate" and "the transaction has been completed" are not evidence. (ECF No. 7, PageID.604, 612). *See Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 621 (6th Cir. 2018) (observing that "an attorney's statement in a brief is not evidence.").

Cir. 2021) ("Courts may take judicial notice of the proceedings of other courts of record."). But the Court will not venture on its own to interpret the monetary figures listed in the reports, especially since the Trustee and Kattula – the parties asserting section 363(m) mootness – carry the burden of providing that information in the first place.[5] *See, e.g., In re Brown*, 851 F.3d at 623.

Because the Trustee and Kattula fail to meet their burden of establishing statutory mootness, section 363(m) does not bar Prime's appeal of the settlement order.[6]

---

[5] Instead of raising section 363(m) mootness for the first time in their appellate brief, the better practice would have been for the Trustee and Kattula to move to dismiss the appeal and attach admissible post-appeal evidence to the motion verifying that the assignment for value, in fact, occurred. *See, e.g., Weingarten*, 396 F.3d at 741 (granting motion to dismiss appeal as moot under section 363(m)); *In re Made in Detroit, Inc.*, 414 F.3d 576, 580, 583 (6th Cir. 2005) (affirming dismissal of bankruptcy appeal as moot under section 363(m)); *Second Grand Traverse Sch. v. Boyd (In re Second Grand Traverse Sch.)*, 100 F. App'x 430, 432, 435 (6th Cir. 2004) (same).

[6] The Trustee and Kattula rely upon *Taleb v. Gold (In re Kay Bee Kay Props., LLC)*, No. 20-10950, 2020 U.S. Dist. LEXIS 240111, at *7-10 (E.D. Mich. Dec. 22, 2020) to claim that Prime's appeal is equitably moot as well. (ECF No. 7, PageID.613 n.8). The Sixth Circuit has since reversed the district court's decision in *In re Kay Bee Kay Props.* The court of appeals now holds that "the doctrine of equitable mootness has no place in Chapter 7 liquidations" like this one. *Taleb v. Miller, Canfield, Paddock & Stone, P.L.C. (In re Kramer)*, 71 F.4th 428, 452 (6th Cir. 2023) (Moore, J., concurring).

B.      *The Settlement Order*

Turning to the merits, Prime argues that the bankruptcy court abused its discretion when granting the Trustee's motion to approve the estate's compromise with Kattula. (ECF No. 5, PageID.527).

A compromise agreement's central purpose "is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Bard v. Sicherman (In re Bard)*, 49 F. App'x 528, 530 (6th Cir. 2002) (quotation omitted).  The bankruptcy trustee "has the authority to seek a settlement of claims available to the debtor, but any proposed settlement is subject to the approval of the bankruptcy court, which enjoys significant discretion." *In re MQVP, Inc.*, 477 F. App'x at 312 (quotation omitted); *see also* Fed. R. Bankr. P. 9019(a); *Rankin v. Lavan (In re Rankin)*, 438 F. App'x 420, 426 (6th Cir. 2011).

When deciding whether to approve a settlement, the bankruptcy court must "apprise itself of the underlying facts and . . . make an independent judgment as to whether the compromise is fair and equitable." *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir. 1988); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).  Bankruptcy courts must evaluate four factors in assessing whether the settlement is fair and equitable:

> (1) the probability of success in the litigation, (2) the difficulties, if any, to be encountered in the matter of collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (4) the

11

> paramount interest of the creditors and a proper deference to their
> reasonable views in the premises.

*In re Bard*, 49 F. App'x at 530.  The Sixth Circuit endorses the predominant view

among this circuit's bankruptcy and district courts that the trustee's decision to settle

a claim should be accorded "some deference." *In re MQVP, Inc.*, 477 F. App'x at 313

(collecting cases).

Here, the bankruptcy court found – after conducting an extensive hearing –

that the Trustee's ability to ascertain the estate's ownership interest in the potential

assets, and prevail in any related litigation contesting those interests, is "uncertain"

(*Bard* Factor One) (ECF No. 3, PageID.504); that the Trustee lacked any funds to

litigate who actually owns the potential assets (including the MOU) and to determine

how best to monetize those ownership interests (*Bard* Factor Two) (*id.*, PageID.502);

that the Trustee would encounter significant hurdles retaining Kattula or Prime's

counsel to represent the estate on "derivative standing basis" due to inherent

conflicts of interest (*Bard* Factors Two and Three) (*id.*, PageID.503-04); that even if

the Trustee could establish whether all the potential assets belong to the estate, "the

net value of the assets that could actually be realized" would prove to be "quite

speculative" due to a lack of valuation evidence (*Bard* Factors Two and Three) (*id.*,

PageID.506-07); that the litigation required to liquidate the estate's ownership

interests is "likely to be complex, very expensive, and very time consuming,"

especially considering the Trustee's inability to retain counsel to prosecute such

lawsuits on a contingency fee basis (*Bard* Factors One, Two, and Three) (*id.*, PageID.507); and that TAJ's main secured creditor – the United States government – approved the compromise because it stood to gain more from the settlement, and its own out-of-court arrangement with Kattula, than retaining its tax liens on the potential assets (*Bard* Factor Four) (*id.*, PageID.505-06; ECF No. 6, PageID.561 n.1).

Because the bankruptcy court meaningfully addressed all the factors necessary to show that the Trustee's compromise with Kattula is "fair and equitable," its decision approving the settlement is not an abuse of discretion. *See Bard*, 49 F. App'x at 531, 533 (finding no abuse of discretion where the bankruptcy court "meticulously analyzed each of [the] relevant factors prior to approving the compromise request"); *see also Bush v. Nathan (In re Bush)*, No. 19-2131, 2021 U.S. App. LEXIS 768, at *8-9 (6th Cir. Jan. 12, 2021) (same).

Prime disagrees with this conclusion.  It argues that the bankruptcy court should have rejected the settlement because the Trustee sold the potential assets for "substantially less than their value." (ECF No. 5, PageID.537-540).

Prime provided the bankruptcy court, though, with no valuation evidence to support this contention. (ECF No. 3, PageID.506-07; ECF No. 7, PageID.650-51, Tr. 26:22-27:8).  The court already determined that the MOU – the potential asset with the greatest likelihood of realizing any significant value – did not belong to the estate

most probably. (ECF No. 3, PageID.504).  And Prime's assertion that it previously offered the Trustee double the compromise price to purchase the same potential assets overlooks an important postscript – that Prime subsequently withdrew that same offer after it learned the Trustee could not warranty the estate's title to any of the assets. (ECF No. 5-1, PageID.545-47; ECF No. 7, PageID.629-30, Tr. 5:25-6:9, PageID.635, Tr. 11:20-25).  So Kattula's offer to buy the potential assets for $50,000, without any title warranty, afforded the Trustee the most cost-effective and feasible way to liquidate the estate's assets "compatible with the best interests of the parties in interest." 11 U.S.C. § 704(a)(1).

Next, Prime maintains that the Trustee violated its obligation to investigate and verify the potential assets' actual worth. (ECF No. 5, PageID.538-39) (citing 11 U.S.C. § 704(a)(4)).  The record shows otherwise.  The Trustee informed the bankruptcy court that the estate lacked sufficient money to fund (1) litigation to determine the ownership of the potential assets, and (2) litigation to liquidate any assets ultimately belonging to the estate.  And the Trustee detailed its unsuccessful efforts to locate and secure "potential buyers of these assets" because of the perceived threat that either Prime, Kattula, or Kattula-related entities would embroil those bidders in further litigation. (ECF No. 7, PageID.631, Tr. 7:9-20).  Prime never rebutted any of these representations.

Also, Prime ignores a fundamental reality.  Even if it achieves the best-case scenario – *i.e.*, this Court reverses the settlement order, directs the bankruptcy court to conduct an evidentiary hearing to ascertain the ownership of the potential assets, and the bankruptcy court rules that all the assets belong to the estate – the likelihood Prime would receive any distribution from the estate's proceeds is negligible.  This is because general unsecured creditors, like Prime, would not receive any money from the estate until the Trustee satisfied all the claims with higher priority, including the United States' secured claim (amounting to $436,154.68), its priority unsecured claim (amounting to $38,596.47), and the Trustee's fees and administrative expenses. (ECF No. 3, PageID.506; ECF No. 6, PageID.578). *See* 11 U.S.C. §§ 507(a)(8)(C), 724(b).  Given Prime's own valuation of the potential assets at $100,000, the probability the estate would "realize a net amount" sufficient to leave any money remaining for Prime's nonpriority unsecured claim appears minimal. (ECF No. 3, PageID.505).

Lastly, Prime faults the bankruptcy court for approving the compromise despite "Kattula's history and proclivity for untruthfulness." (ECF No. 5, PageID.539; *see also id.*, PageID.540).  Citing to the findings in a previous bankruptcy court decision, Prime says that Kattula employed deceptive tactics to conceal assets and that he engaged in "rampant, systematic fraud . . . throughout [his] business dealings." (*Id.*, PageID.539).  But Prime highlights nothing in the record

indicating that Kattula negotiated the compromise in bad faith, that he colluded with the Trustee, or employed deceitful tactics to reach the settlement.  All the evidence instead points to an arms-length negotiation that resulted in the Trustee assigning the potential assets to Kattula for value and maximizing the net value realized from the assets. *See In re Made in Detroit, Inc.*, 414 F.3d 576, 581 (6th Cir. 2005) (holding that good faith "speaks to the integrity of [the purchaser's] conduct in the course of the sale proceedings."); *cf. Hazard Coal Corp. v. Am. Res. Corp. (In re Cambrian Holding Co.)*, 110 F.4th 889, 900 (6th Cir. 2024) (affirming the finality of a lease assignment under section 363(m) although the assignee "seemingly" made "blatant misrepresentations" to the bankruptcy court).

Considering the "deferential standard of review" the Court must afford to the bankruptcy court's decision, none of the reasons Prime offers for reversing the settlement order are availing. *In re Cambrian Holding Co.*, 110 F.4th at 900.  This includes the portion of the settlement order denying Prime's evidentiary hearing motion on mootness grounds.  The bankruptcy court properly denied that relief as moot because, having already approved the Trustee's assignment of the potential assets to Kattula, deciding which of them owned the assets beforehand would be pointless. *See Ellias v. Phoenix Life Ins. Co.*, 501 F. App'x 478, 484 (6th Cir. 2012) ("An issue becomes moot under federal law when the issue is no longer 'live' or the parties lack a legally cognizable interest in the outcome.").  Accordingly,

16

IT IS ORDERED that the bankruptcy court's settlement order is affirmed.


Dated: September 30, 2024        s/Robert J. White           
                                            Robert J. White
                                            United States District Judge